## Lozoskie v. Lozoskie

C.P. of Lehigh County, no. 90-FC-1253.

*John P. Karoly Jr.,* for plaintiff.
*Susan G. Maurer,* for defendant.

FORD, *J.,* November 16, 1998—This difficult custody case periodically comes before the court for hearing, and the updates that we receive at each hearing are not encouraging. The relationship between the plaintiff mother and the defendant father has not been good dur-

ing our acquaintance with the case and seems to get worse as time passes. At the center of the dispute is the parties' son, Ryan C. Lozoskie, who was born on September 16, 1987.

The father lives in Virginia. The mother lives in Lehigh County with the child. In June of this year, the father, with counsel, came before the court to reinstitute regular visitation with his son. There already was in place the August 23, 1996 order of court which granted the father regular, unsupervised visits with his son. That order was entered by agreement of the parties. However, as we will explain later in this opinion, the father did not properly utilize the visitation rights granted him under the order and, primarily through his own fault, had not seen his son from September of 1997 until June of 1998. Both parents contributed to this nine-month gap in face-to-face contact, but the fault was primarily the father's.

On June 10, 1998, we scheduled a hearing on defendant's petition for special relief wherein the defendant was seeking to reinstitute visitation. Despite the fact that counsel for the plaintiff, John P. Karoly Jr., Esquire, had appropriate notice of the scheduling of that hearing (while he did not formally enter his appearance until June 19, 1998, we note that he filed a petition of record on behalf of the plaintiff dated December 29, 1997 and participated in a phone conference with the court in 1998, before June), he gave the plaintiff only one day's notice of that hearing. Accordingly, she did not appear for the hearing, particularly when she learned that Attorney Karoly was not available for the hearing and that, if she was to be represented at the hearing, it was to be by Attorney Lewis Thompson, an associate of Attorney Karoly. The associate of Attorney Karoly appeared on June 10,

1998, the very day when the case was called for hearing, and presented a motion for continuance for an inadequate reason. The motion was denied and properly so. Attorney Karoly did not appear on June 10.

At the hearing on June 10, we took testimony from the defendant and granted him a one-hour visitation that day, on a supervised basis, which visitation took place.

Subsequent to the hearing, the court entered an order on June 16, 1998, which was signed by our colleague, the Honorable Edward D. Reibman, and which order was entered after request by the undersigned to Judge Reibman with a dictation as to exactly what should appear in the order. The order was entered in this fashion because of the unavailability of the undersigned during that week.

Among other things, the order directed that the defendant "shall pick up the minor child at the plaintiff's home at noon on June 20, 1998 and transport the child to Baltimore, Maryland and plaintiff, Jane Tercha, shall pick up the minor child at the paternal grandparents' home in Baltimore, Maryland on June 21, 1998 at 8 p.m." The order further provided that, beginning two weeks after the June 20-21 visitation, "The prior order of court dated August 23, 1996 shall be in effect until further order of court." We note that the August 23, 1996 order had never been rescinded or altered.

The defendant's petition for contempt and sanctions that was filed against plaintiff and Attorney Karoly, and is a subject of this order and opinion, pertains to the visitation that was denied the father on June 20 and 21, 1998.

We now set forth our findings of fact.

It is undisputed that Attorney Karoly and plaintiff, Jane Tercha, knew about the provisions of the court's order of June 16, 1998.

Upon receipt of this order, the plaintiff and Attorney Karoly consulted for the purpose of doing what was necessary to make sure that the court-ordered visitation for June 20-21 did not occur. At all times, plaintiff, Jane Tercha, acted on the advice of Attorney Karoly and believed that, in good faith, she could disregard the provisions of our June 16 order. Accordingly, we dismiss the petition for contempt and sanctions that was brought against her.

On June 19, 1998, at 3:45 p.m., Mr. Karoly filed a notice of appeal with the Lehigh County Clerk of Courts, civil division, appealing our order of June 16, 1998 to the Superior Court of Pennsylvania. The next day, June 20, the defendant drove from his home in Virginia, with the paternal grandfather, to pick up the child and return with him to Virginia for the overnight visitation. After a stop at the state police barracks (which we thought unnecessary), the father went to the home of the mother. The mother and child were not there. At some point, the father had a discussion with the maternal grandfather, who told the father that he could not have visitation that day. The maternal grandfather displayed an "unsigned order" which indicated that visitation should not take place. The "unsigned order" was a copy of the notice of appeal or a copy of some other document pertaining to the appeal. The father looked around that locale to locate Ryan but was unsuccessful. He returned to his home and visitation did not take place that weekend.

The notice of appeal that was filed on June 19, 1998 was filed for one purpose by Mr. Karoly, to provide him with an argument that he could use to defeat the visitation that we had ordered. His argument was that the notice of appeal acted as an automatic supersedeas justifying his client in denying visitation on June 20. During the course of the September 22 hearing, Mr. Karoly admitted that that was the purpose of the filing of the notice of appeal.

The history of this appeal at the level of the Superior Court of Pennsylvania corroborates that this appeal was not filed in good faith because of any belief in the merits of it, but rather was filed as a vehicle to frustrate what this court had directed. In an order dated October 2, 1998, the Superior Court of Pennsylvania dismissed plaintiff's appeal based on "appellant's failure to serve the trial court judge and court reporter with a copy of the notice of appeal as required by Pa.R.A.P. 906(a)(2), (3); appellant's failure to comply with the trial court's order of July 13, 1998 directing the filing of a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b); and appellant's failure to order and pay for the transcripts as mandated by Pa.R.A.P. 1911(a)."

Also, the statement made by Mr. Karoly in his written closing argument following the September 22 hearing demonstrates his determination that he, rather than the court, would determine visitation, at least on June 20 and 21. He states:

"Accordingly, because the June 16, 1998 order provided a sudden overnight visitation of the minor child, Ryan Lozoskie, with his father whom he had not seen or heard from for nearly 10 months and, because the minor's court-ordered counselor, Jack Gerhard, and the minor's

mother, plaintiff, Jane Tercha, represented that this visitation would create immediate and irreparable harm to the minor child, an appeal was filed that date. . . ."

Court orders must be respected by the parties. Counsel cannot willy-nilly alter our orders because counsel believes that we have made a mistake, particularly in a difficult custody case like this. Additionally. Mr. Karoly's argument is frivolous. There is no automatic supersedeas in child custody actions. An appeal of a child custody order shall operate as a supersedeas only after application to and approval of the court. Pa.R.A.P. 1732 and 1733. See also, the discussion in *Groner v. Groner,* 328 Pa. Super. 191, 197-99, 476 A.2d 957, 959-61 (1984). The conduct of Attorney Karoly is offensive, at best. If we condone it or ignore it, we undermine our own orders by allowing machinations of counsel, such as Mr. Karoly's, to subvert what we have put into place for the best interests of the child.

Mr. Karoly is correct that he cannot be held in contempt of court because he was not a subject of the court order. However, his conduct was unprofessional, unauthorized and vexatious to defendant and his counsel in terms of time lost, attorney's fees and subversion of the contact the court granted for the father with the child. Counsel for the plaintiff asked, in the subject petition and orally in court, that sanctions be awarded against Mr. Karoly for this conduct. The issue of sanctions is properly before the court and, for the reasons which we have stated, we tax as costs against John P. Karoly Jr., Esquire, a reasonable counsel fee in the amount of $500. (This amount requested by defendant is reasonable and probably does not adequately cover the attorney's fees

necessary to address this issue, but this is the extent of the request.)

Our authority for awarding counsel fees is twofold. Statutorily, counsel fees may be part of taxable costs for dilatory, obdurate or vexatious conduct. 42 Pa.C.S. §2503(7). Further, lower courts have inherent power to take necessary actions to ensure its ability to conduct its business in an orderly fashion. This inherent power includes the ability to take action against an attorney, who is an officer of the court, in the form of reimbursement to parties of amounts lost due to the attorney's misconduct. *Coburn v. Domanosky,* 257 Pa. Super. 474, 390 A.2d 1335 (1978).

Under this authority, we also require Mr. Karoly to pay a reasonable mileage fee to the defendant for traveling from his home to Lehigh County and back again on June 20, in the fruitless visitation effort. This cost directly results from the obstructive conduct of Mr. Karoly. We assess this cost in the amount of $124.80, which represents 390 miles at $.32 per mile (round trip).[1]

By agreement of the parties, we permitted Mr. Karoly to state various oral motions at the time of the hearing so that all matters could be concluded in this one hearing. Mr. Karoly then proceeded to make quite a number of oral motions. They included a motion for sanctions against Attorney Maurer, counsel for the defendant, for making the motion against Mr. Karoly, a motion for con-

---

1. The most direct route from Alexandria, Virginia, home of the father, to Allentown, Pennsylvania, home of the child, is 195 miles one way.

tempt against the father for alleged failure to comply with the counseling requirements of earlier orders, failure to appear for visitation at the times that visitation was authorized, alleged consumption of alcohol during visits, the denigration by the father of the mother, violation of other requirements pertaining to the setting up of visitation, improperly dropping off the child at the paternal grandparents' home when no one was allegedly available to receive the child at that time (July 5, 1998), dropping the child off too early on July 5, 1998, alleged threats to the mother and Mr. Jack Gerhard, and other motions for contempt regarding visitation or failure to have visitation. In addition, Mr. Karoly filed plaintiff's petition to quash improper petition for contempt and sanctions by defendant.

By our order, we deny all of these petitions filed by Mr. Karoly. There is no evidence of any wrongful conduct by Attorney Maurer, and as we have addressed in detail, there is merit to her petition for sanctions against Mr. Karoly. It appears to us that Attorney Maurer has acted responsibly in the representation of her client. As to the allegations against Mr. Lozoskie, there is no evidence to support most of these allegations. As to the remaining allegations, a finding of contempt is inappropriate and so we deny the oral motion of Mr. Karoly in that regard. However, we grant other relief in the form of altering the visitation which is permitted to him. The best interests of the child require such alteration.

The believable evidence from the September 22 hearing convinces us that unsupervised and regular visitation by the father with the child is no longer appropriate, despite the agreement of the parties reached in 1996.

The lack of contact between the father and Ryan from September of 1997 until June of 1998 is, in a word, inexcusable. The father alleged a number of attempts by him to reinstitute the contact. He claimed that the mother frustrated him at every turn. His testimony is unconvincing in this regard, although the mother can hardly be called a facilitator of the visitation. The believable testimony demonstrates that the defendant haphazardly and irregularly sought contact with his son. The court would have assisted in reestablishing contact with the appropriate petition, brought long before the petition which brought the defendant to court on June 10, 1998.

Father made infrequent attempts at telephone conversations between September of 1997 and June of 1998. What we heard from the testimony was that there were only three actual telephone conversations during that time. Letters were never sent and gifts were never exchanged.

We find from the evidence that the father does denigrate the mother to and in the presence of the child. This is obviously hurtful to the child. When the defendant was confronted with the question of whether he had referred to the mother as a "bitch" in talking with the child, the defendant gave the curious answer that he "may have called her that." The defendant also admitted that, on at least one occasion, Ryan became upset with the way that he referred to the mother.

There was admission by the defendant of some profanity and screaming in the presence of the child but not directed to him. From the evidence that we heard, this also is bothersome to the child.

The defendant has admitted that he has denigrated Mr. Jack Gerhard, Ryan's counselor, to Ryan. He also discussed issues with Ryan regarding Mr. Gerhard's involvement in this case. Obviously, that is totally inappropriate.

The defendant was able to visit with the child in early July of 1998. On July 2, 1998, the defendant arrived at the mother's home, unannounced and early from visitation. The mother was not there, so the defendant proceeded to the maternal grandparents' home. He delivered the child to that home under circumstances that cause us concern. The defendant did not take the appropriate precautions to make sure that there was someone present to receive Ryan. At the very least, additional safeguards should have been taken.

The defendant clearly has difficulty in controlling his temper and this difficulty manifests itself many times in the presence of Ryan.

We have grave concerns about the consistency of visitation and we have grave concerns about the way that the defendant conducts himself when visitation actually takes place. Accordingly, the best interests of the child require that we alter the visitation which was permitted with the agreed order of August 23, 1996. As specified in the order that we now enter, the defendant must demonstrate his commitment to visiting the child by doing that on a regular basis and our order permits that. Additionally, the defendant must demonstrate his commitment to conducting himself appropriately during the course of these visitations. While it is with great reluctance that we order supervised visitation, it is necessary so that we have an independent third party monitoring the visits to

make sure that misconduct does not take place and to make a record of what occurs, in the event that reference to a record is necessary.

Certainly our desire is to establish a meaningful, open and unsupervised relationship of the father with his son. We foresee that happening only after the defendant demonstrates good faith efforts on his part to remove the objections to the way he presently conducts his visitation which we have enumerated herein.

While the September 22 hearing was detailed, we recognize that it was focused on the subject of contempt and sanctions. Accordingly, if the father believes that we have not properly assessed his motivation and conduct during visitation, we hereby authorize the father to immediately request a full hearing before the undersigned, at which time the focus will not be contempt, but the issue of visitation and all issues related thereto.

While the facts at the September 22 hearing developed concerns about the conduct of visitation which we did not know in June when we entered the June 16 order allowing continued, unsupervised visitation, that does not alter the untoward conduct of Mr. Karoly in subverting our order. The visitation problems are not a defense to the motion for sanctions that was brought.

## ORDER

Now, November 16, 1998, following a hearing conducted on September 22, 1998, on defendant's petition for contempt and sanctions and on various other oral motions made at the hearing, and for the reasons set forth in the accompanying opinion, it is hereby ordered as follows:

(1) The petition for contempt and sanctions against plaintiff, Jane Tercha, is dismissed in that she has not willfully violated prior orders of court.

(2) The petition for contempt against John P. Karoly Jr., Esquire, counsel for plaintiff, is dismissed in that he was not a subject of prior court orders in this case.

(3) The petition for sanctions against John P. Karoly Jr., Esquire, stated in the petition filed June 24, 1998, and verbally at hearing, is granted in that the conduct of Attorney Karoly regarding the events of June 19 and June 20, 1998, was arbitrary, unauthorized and vexatious, as a result of which defendant and counsel were made to unnecessarily incur expense and time, the defendant was denied court-ordered visitation, and the actions of Attorney Karoly subverted or had the tendency to subvert our order of June 16, 1998. In this regard, John P. Karoly Jr., Esquire, is ordered to pay $500 in counsel fees and to reimburse the defendant for unnecessary travel to and from his home in the amount of $124.80 (390 miles at $.32 per mile). All amounts are due from Attorney Karoly within 30 days of this order and are to be paid to counsel for defendant.

(4) All oral motions made at the hearing of September 22, 1998 for contempt or sanctions against defendant or his counsel are denied.

(5) Based upon the improper conduct of the defendant, by act and omission as demonstrated during the hearing of September 22, 1998, the court orders that the unsupervised visitation of the defendant with the parties' child, Ryan Lozoskie, which was ordered on April 23, 1996, is hereby suspended. The defendant is granted

only supervised visitation with the child, one hour per week, under the following conditions:

(A) Supervision shall be by Pinebrook Services for Children & Youth, 1033 Sumner Avenue, Whitehall, Pennsylvania 18034 (telephone number: 610-432-3919);

(B) The defendant may immediately institute these supervised visits at the office of Pinebrook Services by making arrangements directly with Pinebrook Services as to the time and date for such visit. Upon securing a time and date, the defendant shall send the plaintiff a letter advising as to the time, date and place of the supervised visitation and such notification shall be provided to the plaintiff at least one week in advance of the scheduled visitation. The visitation shall not be scheduled during the child's school hours. The plaintiff must make the child available for such visitation and the provision of one week of notice to her provides sufficient time for that purpose;

(C) If the Pinebrook Services supervisor believes that inappropriate conduct is taking place by the defendant at any time during the course of the visitation, the Pinebrook Services employee has the right to terminate that visitation;

(D) During the course of all visitations, the defendant may not do the following: denigrate the plaintiff or any of her family members, discuss any custody issues, denigrate anyone connected with the custody case, or use foul or inappropriate language;

(E) The costs of the visitation shall be borne by the defendant.

At the point when the defendant believes he is in a position to demonstrate to the court his good faith in vis-

iting the parties' child on a regular basis and to act appropriately during visitation, the defendant may petition the court for a hearing to readdress visitation issues, including increasing the time of visitation and making the visits unsupervised.