J-S84045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| T.B. | : | |
| | : | |
| | : | |
| APPEAL OF: T.B. | : | |
| | : | No. 1386 MDA 2017 |

Appeal from the Order Entered August 9, 2017
In the Court of Common Pleas of Columbia County
Civil Division at No(s): 2013-CV-545

BEFORE: SHOGAN, J., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 14, 2018**

T.B. ("Father") appeals from the order entered on August 9, 2017, in the Court of Common Pleas of Columbia County, which granted the petition of M.C. ("Mother") to find him in contempt of the custody order regarding their female child, K.B. ("Child"), born in November of 2011. Upon careful review, we affirm.

Mother initiated the underlying custody action in April of 2013, when the parties resided in Columbia County, Pennsylvania. The court appointed John L. McLaughlin, Esquire, as special custody master, who presided over the underlying custody matter, which we summarize as follows. In September of

2013, the court granted the parties shared physical and legal custody.[1] However, Mother subsequently began treatment for heroin addiction. In October of 2014, pursuant to Father's petition for modification, the court granted Father primary physical custody and Mother partial physical custody at the home of M.W. ("Maternal Grandmother"), which was located in Clearfield County, Pennsylvania. Thereafter, the court scheduled periodic reviews of this case.

In April of 2015, the court ordered that Mother shall have partial physical custody from "May 23, 2015, until one (1) week before school resumes. The child shall sleep each night in the home of Maternal Grandparents. . . ." Master's recommendations, 4/7/15, at ¶ 3. The order further provided, "The parties shall equally share all transportation necessary to maintain the schedule of contacts recommended herein. The parties shall meet at a mid-point location." *Id.* at ¶ 4.

On November 4, 2015, the trial court issued the existing custody order, wherein it continued primary physical custody with Father. However, the court granted Maternal Grandmother partial physical custody "at times

---

[1] Prior to the initial custody order, Father relocated from Columbia County to the State of Oklahoma, where he has remained. Soon after the court issued the initial custody order, Mother relocated from Columbia County, but she has remained living in Pennsylvania throughout this case, namely, in Armstrong, Indiana, Clearfield, and Jefferson counties.

corresponding with Father's son's visitation with his [m]other in Ohio."[2] ***See*** Master's recommendation, 11/4/15, at ¶ 2. The court granted Mother supervised physical custody in the home of Maternal Grandmother. Further, the court directed that Mother "may not take the child outside the home unless accompanied by Maternal Grandmother or Maternal Grandfather." ***Id.*** at ¶ 3. The court directed that "Maternal Grandmother and Father shall share all transportation necessary to maintain the schedule of contacts recommended herein as they may agree."[3] ***Id.*** at ¶ 6.

Child spent an unspecified amount of time at Maternal Grandmother's home in the summer of 2016. N.T., 8/29/17, at 13, 33. However, in May of 2017, Father informed Maternal Grandmother and Mother that he would not permit Child to be in their custody in the summer of 2017. ***Id.*** at 7, 13-15. On May 25, 2017, Father filed a petition to modify the existing custody order. On July 18, 2017, Father filed a praecipe to withdraw the petition. On June

---

[2] Father's son is Child's half-sibling, who was then nine years old. The record does not reveal the custody arrangement involving Father's son. However, Mother testified that, pursuant to the existing custody order, she expected Maternal Grandmother to have partial physical custody for all but three weeks in the summer, for one-half of Christmas vacation, and for one-half of the spring break. N.T., 8/4/17, at 4.

[3] Father testified that the transportation arrangement the parties followed was the same as in his son's order, namely, that "they come all the way and get [Child] and I pick [Child] up. It's 50/50 pretty much whoever's time it is to get [Child] they got to pay for transportation to get her and take her to their house." N.T., 8/29/17, at 12.

23, 2017, Mother and Maternal Grandmother filed *pro se* a petition for contempt, wherein they alleged that Father was in violation of the existing custody order by not permitting them to exercise physical custody that summer.[4]

The trial court held a hearing on August 4, 2017, at which time Child was five years old and entering into kindergarten for the 2017-2018 school year. N.T., 8/4/17, at 3. During the hearing, Mother, who was represented by Christine Luschas, Esquire, testified. Father, who was represented by Hugh Taylor, Esquire, testified *via* telephone. At the conclusion of the hearing, the court stated on the record in open court, in pertinent part:

> I will note for the record that it was a whole summer of custody that has been taken away from this child and her mother and then grandmother pursuant to a Court Order. . . . And there has been plenty of time [to] do something about it before this summer, one way or another. And it has not been done. So here we are.
>
> It is clearly contempt of Court. It didn't happen. And I wish the best on working it out. I think it can be worked out from the testimony. . . . If the parties want to come back to me before September 15th or do it by phone conference what might be a reasonable accommodation, I will be happy to listen.

N.T., 8/4/17, at 16-17. On August 9, 2017, the trial court entered the following subject order.

> AND NOW, to wit, the Court finds that [Father] is in contempt of the outstanding custody Court and fines him $500.00. It is further

---

[4] By that time, Maternal Grandmother had relocated to Jefferson County, Pennsylvania, and Mother was living with her. Trial Court Opinion, 9/19/17, at 2.

- 4 -

directed that [Father] be incarcerated in the Columbia County Prison for a period of not less than sixty (60) days effective September 1, 2017, at 9:00 o'clock a.m.

[Father] may purge this sentence by making a proper and mutually agreed[-]upon arrangement[] for makeup time and other issues regarding custody.

Order, 8/9/17.

On August 21, 2017, Father, through new counsel, Taylor J. Mullholand, Esquire, from the Zeigler Law Firm, LLC, filed a motion for reconsideration.[5] By order dated August 22, 2017, the trial court scheduled an evidentiary hearing on Father's motion, which occurred on August 29, 2017. Mother, Maternal Grandmother, and Father, *via* telephone, testified. By order entered on August 30, 2017, the trial court denied Father's motion.

On September 5, 2017, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The court filed its Rule 1925(a) opinion on September 19, 2017.

On appeal, Father raises the following issue:

Whether the trial court erred and abused its discretion by holding [Father] in [c]ontempt and denying [Father's] [m]otion for [r]econsideration in light of the evidence and based upon the cited case law[?]

Father's brief at 2.

_____

[5] On August 28, 2017, Attorney Taylor filed a praecipe to withdraw his appearance, and Attorney Mullholand filed a praecipe to enter his appearance on Father's behalf.

Our standard of review is well-established.

When we review a trial court's finding of contempt, "we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt." *P.H.D. v. R.R.D.*, 56 A.3d 702 (Pa. Super 2012) (citation omitted). This court also has stated that "each court is the exclusive judge of contempts against its process." *Royal Bank of Pennsylvania v. Selig*, 644 A.2d 741, 747 (Pa. Super. 1994).

*G.A. v. D.L.*, 72 A.3d 264, 269 (Pa. Super. 2013) (quotations in original). We have explained, "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009) (citation omitted).

Section 5325(g) of the Custody Act provides, in relevant part,

**§ 5323.  Award of custody.**

. . .

**g)  *Contempt for noncompliance with any custody order.***

**(1)**  A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt.  Contempt shall be punishable by any one or more of the following:

**(i)**      Imprisonment for a period of not more than six months.

**(ii)**     A fine of not more than $ 500.

. . .

**(2)**  An order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual.

23 Pa.C.S. § 5323(g).

> This Court has explained:
>
> In order to sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which she is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Harcar v. Harcar*, 982 A.2d at 1235 (citation omitted).

On appeal, Father argues that the evidence does not support the contempt order with respect to the second and third elements, *i.e.*, that his failure to allow Maternal Grandmother and Mother to exercise their partial physical custody pursuant to the existing custody order in the summer of 2017 was volitional and/or done with wrongful intent. Specifically, Father asserts that he did not send Child based on the advice of Attorney Taylor who also "[assured] him this act could not qualify as contempt." Father's brief at 8.

In the alternative, Father argues that the court abused its discretion by effectively modifying the existing custody order by requiring that he bear the financial burden of transportation related to the custody exchanges. Because this issue was not set forth or suggested by Father's statement of questions involved in his brief, we deem it waived.[6] *See Krebs v. United Refining*

---

[6] At the conclusion of the reconsideration hearing, the trial court stated on the record in open court that Mother's proposal for make-up time was reasonable. N.T., 8/29/17, at 42. The proposal included, in part, that the parties would meet half-way to exchange custody. *Id.* at 39-40. She did not specify any

***Company of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's Statement of Questions Involved is deemed waived).

During the evidentiary hearing on his motion for reconsideration, Father's counsel introduced text messages between Father and Attorney Taylor. Father testified on direct examination that Attorney Taylor stated in a text message, "I wouldn't give [Mother] any custody at this point." N.T., 8/29/17, at 8. Father replied that he did not want to be in contempt of court, and Attorney Taylor stated, "You will not be[.]" ***Id.*** Father replied, "And how would I not to be in contempt of [c]ourt if I didn't let her go when the [c]ourt papers say to?" ***Id.*** Attorney Taylor stated, "Because you have justification for not doing so[.]" ***Id.*** Father testified that Attorney Taylor subsequently telephoned him and stated, "Relax, you're fine, she's a bum and Columbia County likely does not even have jurisdiction over this case anymore."[7] ***Id.*** at 8-9.

_____

location for the custody exchanges. Even if Father's issue was not waived, we would conclude it is without merit because Mother's proposal to meet half-way for the custody exchanges did not modify the existing custody order, which required that they "shall share all transportation. . . ." Master's recommendation, 11/4/15, at ¶ 6.

[7] The parties do not challenge the subject matter jurisdiction of the Columbia County Court of Common Pleas ("Columbia County") on appeal. However, this Court may raise the question *sua sponte*, and it is a question purely of law. ***B.J.D. v. D.L.C.***, 19 A.3d 1082 (Pa. Super. 2011) (citation omitted). Our standard of review is *de novo*, and our scope of review is plenary. ***Id.***

The parties do not provide any case precedent on point, and our research has not revealed any.[8] At the conclusion of the reconsideration hearing, the trial court stated on the record in open court, "In this case, I don't think advice of counsel mitigates the willfulness. I just don't think so. If that were the case, we'd have attorneys using that ploy all the time, I think." N.T., 8/29/17, at 44. Further, in its Rule 1925(a) opinion, the court found as follows.

> Father defends his position by saying he did not send the child upon advice of counsel. That is no defense or it would be a defense in almost every case once counsel found out about such a preposterous loophole. Counsel's advice cannot trump a court order.
>
> Father alleges that he acted in good faith in trying to comply and by following counsel's advice. This court finds that he acted in

_____

Upon review, we conclude that Columbia County has exclusive, continuing jurisdiction under Section 5422(a) of the Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa.C.S. § 5401-5482. Indeed, Columbia County had made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) in September of 2013. Further, Columbia County has not determined that Child and one parent does not have a significant connection to this Commonwealth, as Mother resides in this Commonwealth. Likewise, Columbia County has not determined that substantial evidence is no longer available in this Commonwealth concerning Child's care, protection, training and personal relationships. **See** 23 Pa.C.S. § 5422(a).

[8] Father requests that this Court adopt the reasoning of the Lehigh County Court of Common Pleas in **Lozoskie v. Lozoskie**, 43 Pa. D. & C. 4th 326 (filed November 16, 1998). In that case, the court found that the mother acted on the advice of counsel and believed, in good faith, that she could disregard the custody order granting her child's father overnight visitation during a specific time. Based on this finding, the court dismissed the petition for contempt filed by the father against the mother. We are not persuaded by that case.

bad faith and sought to impose his will on this court's custody order. He did not act in good faith.

Trial Court Opinion, 9/19/17, at 3-4. We discern no abuse of discretion.

Father testified during the August 4, 2017 hearing that it "was complete chaos" in the summer of 2016, when Maternal Grandmother exercised partial physical custody pursuant to the existing custody order. N.T., 8/4/17, at 13. He testified that Maternal Grandmother complained during the summer "she didn't have help" with Child. *Id.* Father explained that Maternal Grandmother "is all by herself, and [Child] was a handful." *Id.* at 14. Specifically, Father testified that he did not permit Child to go to Pennsylvania during the summer of 2017 because Maternal Grandmother did not provide the day care center, where she planned to enroll Child during the summer of 2017, with a copy of the existing custody order. *Id.* Father testified that the day care center did not know "that [Mother] can only see her daughter when she is supervised by [Maternal Grandmother]." *Id.* In addition, Father learned that a cousin of Mother's boyfriend worked at the day care center and "would be babysitting my daughter." *Id.* Father testified that he told Maternal Grandmother "that she needed to find a different daycare[.] [S]he said that I didn't need to worry about it. She was the one that was paying for it, not me. And I said 'well [Child] is not going.'" *Id.*

During the reconsideration hearing, Maternal Grandmother agreed that the custody dispute occurred because Father "didn't like the day care I was choosing." N.T., 8/29/2017, at 29-30. She testified on cross-examination:

Q. What did you do as a result?

A. Went to another day care.

Q. Did you tell him about the other day care?

A. Yes. I forget the name of it. He said, "No, we'll see you in [c]ourt."

Q. So did you explain to him that you were willing to supervise [Mother's partial physical custody]?

A. Yes.

. . .

Q. Did you tell him you were willing to come to Oklahoma for the . . . exchange?

A. Yes.

Q. What did he say?

A. He said, "I'll see you in [c]ourt."

N.T., 8/29/17, at 29-30. Maternal Grandmother clarified on re-cross examination:

Q. Did you offer him any other [day] cares? Did you let him have a choice to pick a day care. . .?

A. No, I picked the day care.

Q. And did he say why he didn't like that second day care?

A. He didn't say anything about the second day care[.] [H]e just didn't want to hear it.

*Id.* at 32.

We conclude that the foregoing evidence supports the trial court's finding that Father's violation of the existing custody order in the summer of

2017 was volitional and done with wrongful intent. We agree with the court that Father sought to impose his will over the existing custody order especially in light of filing, but then withdrawing, the petition to modify custody during the summer of 2017, as stated above. Rather than seek the court's intervention, Father unilaterally withheld partial custody from Maternal Grandmother and Mother. We are unpersuaded that Father's reliance on Attorney Taylor's advice negates his willful conduct. Accordingly, we affirm the order finding Father in contempt of the existing custody order.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>02/14/2018</u>