## Budget Laundry Company *v.* Munter et al., Appellants.

Argued September 28, 1972.   Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Murray S. Love* and *Seymour A. Sikov*, with them *Sikov & Love*, for appellants.

*Louis Vaira*, with him *Carl D. Smith*, for appellee.

Opinion Per Curiam, December 19, 1972:

The instant appeal arises out of an action in assumpsit commenced in the Court of Common Pleas of Allegheny County.   After the pleadings had been completed and the case placed at issue, it eventually reached the jury trial list in the Civil Division of that court.   Appellants were represented by Attorney Murray S. Love of the law firm of Sikov & Love.   The Pittsburgh Legal Journal of December 8, 1970, listed the case for the jury trial term commencing January 11, 1971, and specifically indicated that the case would be called on the daily trial list of January 19, 1971.

The case was indeed called on the daily trial list of January 19, 1971, and reached its turn for the selection of a jury on January 27, 1971.

When the case had been called on January 19, 1971, the calendar control judge was informed that Mr. Love was trial counsel in that case and that it could only be tried by him. On January 27, 1971, when the case was in position for the selection of a jury, the calendar control judge was informed that Mr. Love was then in trial before another judge of the same court and that he was next scheduled for trial in the United States District Court for the Western District of Pennsylvania. The calendar control judge nevertheless ordered that the jury selection process proceed, and when no one appeared to examine jurors on behalf of appellants, the chief minute clerk of the Civil Division exercised four challenges on behalf of appellants and a jury was selected and impaneled. By the following day, when the case was scheduled to be tried, Mr. Sikov of the firm of Sikov & Love, appeared before the trial judge and again sought a continuance of the case. By that time, Mr. Love's other case in the Court of Common Pleas of Allegheny County had concluded and he was engaged in trial in the United States District Court in a case which was estimated to require two or three days to try. At that point, the then-current jury trial term in the Court of Common Pleas had approximately three and one-half weeks remaining in it, and Mr. Love had only the case forming the basis for this appeal and one other case to be tried. Counsel for appellee had no other case on the then-current trial list to be tried. It was, therefore, readily apparent that if the case did not go to trial on January 28, 1971, it would, nevertheless, be tried within the then-current trial term. Despite this, the case was ordered to be tried, and since no counsel appeared for appellants, the case proceeded ex parte, and a verdict was returned in favor of appellee

in the amount of $21,909. Post-trial motions were filed and denied, and after entry of judgment on the verdict of the jury, an appeal was taken to the Superior Court. That court affirmed the judgment, and we allowed an appeal.

Needless to say, this type of appeal provides maximum difficulty for an appellate court. The courts of the Commonwealth have been striving mightily to reduce backlogs and to speed the course of litigation. We are all too aware of the extreme problems created, particularly in the large metropolitan counties of the Commonwealth, by calendar congestion and the attendant delays in the disposition of litigation. It is only by virtue of the adoption of strict calendar control that courts throughout the Commonwealth have been successful in coming to grips with this problem. We, of course, support the efforts of the courts of common pleas to solve the backlog problems. We are, nevertheless, constrained to conclude that the action of the court below in this instance constituted an abuse of discretion.

In *Nerkowski v. Yellow Cab Co. of Pgh.*, 436 Pa. 306, 259 A. 2d 171 (1969), we were faced with a similar problem, coming from the same court of common pleas. In that case, a member of a law firm who was scheduled to defend the action was appointed to the bench of the court of common pleas shortly before the case was scheduled to come to trial. Another member of his former law firm was selected by the defendant to represent it in the trial of the case. The calendar control court was informed of the substitution of trial counsel, and the substituted counsel then explained to the calendar control judge that he was already committed to try a case before another common pleas court judge, which case had been specially set at the top of the list. He therefore requested a continuance for one

week, or until the case in which he was then participating could be completed. This request was denied, the case was ordered to trial, proceeded ex parte and eventuated in a verdict and judgment for the plaintiff. We reversed and granted a new trial on the basis that the denial of a continuance was, in those circumstances, "undoubtedly an abuse of discretion." In *Nerkowski,* at page 309, we said: "While we can appreciate the lower Court's concern for the orderly and speedy administration of Justice, we do not agree with its conclusion that appellant failed to present a satisfactory excuse for failing to be ready for trial."

In the instant case, as in *Nerkowski,* we do not find justification for the extremely harsh requirements imposed by the calendar control court.

The court below, in its opinion sur post-trial motions, takes a strong position and makes undoubtedly valid arguments for the orderly process of disposing of trial litigation. Nevertheless, we cannot agree that in these specific circumstances, it was necessary to require appellants to proceed to trial unrepresented. Appellants contend that the actions of the court below deprived them of their right to counsel of their choice. The lawyers, of course, contend that their rights, as members of the bar and officers of the court, have been infringed. We need not reach questions posed by appellants as to the presence or absence of a constitutional right to counsel of their choice or due process and equal protection arguments raised by them, inasmuch as we view the action of the court below to be an abuse of discretion.

The court below points out that a well-publicized trial policy exists in that court, known to all counsel, which is printed periodically in the Pittsburgh Legal Journal and is a part of the printing of each trial list. That trial policy provides:

"1. Counsel as listed for the case must be available and ready to try the case at the time it is called;

"2. If listed counsel is not available *for whatever reason* then they must be substituted for;

"3. If a firm does not have sufficient trial counsel to substitute, provision must be made to obtain other trial counsel;

"4. If listed counsel is not available and no substitute provided, the case will proceed without counsel;

"5. The foregoing will apply regardless of the direction or desires of the corporate or individual client. . . ." (Emphasis supplied.)

The court below opines that counsel, being aware of the ground rules, should be held to strict compliance therewith. We perceive that a strict enforcement of the trial policy of the Court of Common Pleas of Allegheny County would, in certain instances, directly conflict with the Pennsylvania Rules of Civil Procedure. Rule 216, Pennsylvania Rules of Civil Procedure provides for continuance of cases. That rule states:

"(a) The following are grounds for continuance:

"(1) Agreement of all parties or their attorneys, if approved by the court;

"(2) Illness of counsel of record, a material witness or a party. . . ."

It is apparent that a strict or literal interpretation of Item 2 of the trial policy would not allow for a continuance, even if trial counsel were ill. The interest of the courts of common pleas in moving litigation expeditiously, which interest we share, surely does not require so rigid a rule as is contemplated by the trial policy of the Allegheny County Court of Common Pleas.

Were it possible to assign a trial date to each lawsuit on the day that it is filed, there would be much

more justification for the action taken by the court below. As an example, the arbitration docket of the Civil Division of the Court of Common Pleas of Allegheny County is so set up that a trial date is assigned to the case when the complaint is filed. Counsel are then aware of their obligations in that division of the court and can make the necessary arrangements to accommodate that court's schedule. Such, however, is not the case in the Civil Division with cases where the amounts in controversy are in excess of the jurisdictional limit of the arbitrators. There, a case is filed and counsel has no way of knowing when the case will reach the trial list, or, for that matter, when it will be tried after it has reached the trial list. The procedural history of the instant case is example enough of what we mean. It will be noted that this case was listed for the trial term commencing January 11, 1971, and specifically listed for the daily trial list of January 19, 1971. Having reached the daily trial list on January 19, 1971, it was not in position for selection of a jury until January 27, 1971, and not in a position for trial until the next day, January 28, 1971. In such circumstances, it is surely unreasonable to expect counsel to be ready for a period of eight or nine days to go to trial when he might very well become involved in other trials in the interim.

There has long existed a cooperative policy between the United States District Court for the Western District of Pennsylvania and the Court of Common Pleas of Allegheny County. Both courts are busy and both handle huge volumes of litigation. There are inevitable conflicts in the trial schedules of counsel. In order to minimize the difficulties caused by such conflicts, the two courts have informally arranged matters so that busy trial counsel are able to alternate between the two courts where there are conflicts. That policy,

of course, is what was being followed when Mr. Love moved from his just-completed trial in the court of common pleas to trial of a case in the district court. At the conclusion of that district court trial, he would then once again have been available to try the case in the court of common pleas. The type of informal arrangement between the two courts described above is clearly necessary for the functioning of both courts. Although such an arrangement cannot possibly work to perfection, it must surely be of great assistance to both courts, to the lawyers involved and to the litigants. We approve of such arrangements and urge their continuance.

We do not believe that the mere fact that Mr. Sikov is a partner in the firm of Sikov & Love qualified him to be substituted as counsel in this case. It is unreasonable to believe that all of the lawyers in a particular law firm will be sufficiently familiar with all of the files in that office so that any one may be substituted for another in the trial of a lawsuit, and that is to say nothing of any right which a client may have to select counsel to represent him at trial. The pretrial record indicates that appellants were prepared to call some thirteen witnesses and present sixty-odd exhibits during the course of trial. Sikov & Love indicates that appellants were personal clients of Mr. Love and that Mr. Love was the only attorney in their office who had had any connection with the case from the time that it came into the office. We, of course, are in no position to judge the complexity of the litigation, and we cannot say, as we did in *Nerkowski, supra,* that the case involved any unusual, controversial or difficult questions. That is not to say, however, that any lawyer, unfamiliar with the file, would be in a position to try it.

Dilatory practices by lawyers cannot be countenanced. Nor can lawyers be permitted to disrupt the

orderly process of disposition of litigation by the sheer weight of the number of cases which they are engaged to try. But it must always be borne in mind that lawsuits are more than numbers or punches in computer cards. Individual cases are, of course, of great importance to the litigants involved, and courts must not overreach in their zeal to move cases to such an extent as to allow for no deviations from strict and literal adherence to policies justifiably laid down to improve the condition of the courts. We believe that the instant case is just such a case as requires the tempering of the strict trial policy in order that justice be done. We point out that counsel for appellee, although he did not join in a request for a continuance, did not object to one. We reiterate that the case would undoubtedly have been disposed of within that very trial term if appellants' request for a continuance had been granted. Nothing appears in this case which would indicate that appellee would have been in any way prejudiced by a three or four day delay and, in the language of *Nerkowski*, at page 310: "there was no indication in the record that any other attorneys in [the] firm were sufficiently familiar with the case to adequately represent the defendant on such very short notice."

Undoubtedly, it might have been possible to substitute counsel and for substituted counsel to familiarize himself with the case had Mr. Love known for certain at the call of the list on January 19, 1971, that the case would be called for trial on January 27 and that he would be finishing another trial on that date. But the vagaries of the trial calendar docket admit of no such exactitude. Cases may reach the top of the list much sooner than anticipated, depending upon what disposition is made of earlier cases on the list. There may be a large number of settlements or there may be very few and there may be long trials, thereby causing cases to reach the top of the list much later than had been an-

ticipated. The circumstances which produced the instant situation must surely occur only infrequently, and when they do, some consideration is necessary, both for the sake of the bar and the litigants they represent.

We, of course, cannot state with certainty that such situations arise infrequently, but our knowledge of such matters which have reached us indicates that we may be relatively confident of our view that the problem is not one which often arises.

In addition to the instant case, we are aware of only *Nerkowski, supra,* and two other cases where we were asked to interevene in such matters. In one, we granted a rule to show cause why a writ of prohibition should not issue to prevent the trial of a case where the party seeking the writ was engaged in other litigation at the time the matter was scheduled to be tried. That case became moot by virtue of the completion of the litigation in which counsel had been involved and we, therefore, discharged the writ. In the other situation, nonsuits were entered because plaintiff's counsel was engaged in trial elsewhere, and we reversed and remanded for a trial. Thus, from the beginning of the trial policy of the Court of Common Pleas of Allegheny County to now, we are aware of only four instances in which apparently insoluble conflicts arose and required the imposition of drastic remedies by the calendar control court. We cannot believe that problems which arise so infrequently require the taking of the drastic measures taken in order to prevent a breakdown of the orderly disposition of litigation.

We are, of course, loath to interfere in the workings of the calendar control court. Nevertheless, we must caution that speedy disposition is not the sole element to be considered in dispensing justice, and that where special circumstances exist, special consideration must be given lest we allow statistical surveys and analysis

to become the be-all and end-all of our system of justice.

The order of the Superior Court is reversed, the judgment of the Court of Common Pleas of Allegheny County, Civil Division, is reversed and the record is remanded to that court for a trial.

Mr. Justice POMEROY concurs in the result.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

In joining the opinion of the Court I desire to express my strong disagreement with any rule of court which subordinates the quality of justice to the hazards of arbitrary insistence upon an "assembly-line" disposition of cases. Such inflexibility neither serves the interests of justice nor advances the proper objectives of effective court administration. As was so eloquently stated by Judge Jerome FRANK: "The law is not a machine and the judges not machine-tenders. There never was and there never will be a body of fixed and predetermined rules alike for all. The acts of human beings are not identical mathematical entities; the individual cannot be eliminated as, in algebraic equations, equal quantities on the two sides can be cancelled. Life rebels against all efforts at legal over-simplification. . . . To do justice, to make any legal system acceptable to society, the abstract preestablished rules have to be adapted and adjusted, the static formulas made alive." Jerome Frank, Law and the Modern Mind, p. 120.

Mr. Justice NIX and Mr. Justice MANDERINO join in this concurring opinion.