390 A.2d 1335

**Thomas J. COBURN, Appellant,**

v.

**Carl DOMANOSKY and Dorothy Domanosky, his wife, and Henry J. Gashi, Sr.**

v.

**Henry J. GASHI, Jr., and David Gashi.**

Superior Court of Pennsylvania.

Argued June 16, 1977.

Decided July 12, 1978.

Barry A. Yelen, Wilkes-Barre, for appellant.

Andrew I. Puhak, Wilkes-Barre, for appellees, Domanosky.

476

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from the refusal to take off a compulsory nonsuit.

Appellant sued appellee in trespass. The case was listed for trial on the civil list for the week of October 14, 1975. At the call of the list, on the morning of October 14, counsel for appellant stated that he was ready to proceed to trial, but that he first had a case in criminal court scheduled for trial that same morning. The civil court judge allowed counsel until 2:00 p. m. to attempt to make arrangements to avoid the conflict. At 2:00 p. m., in recorded proceedings, counsel stated to the civil court judge that he had been unable to find another attorney to handle the criminal case; that he had anticipated that the criminal case would be tried non-jury and thus in all probability would require only a short time to try, but that instead, that morning the criminal court judge had refused to accept the defendant's waiver of jury trial; and that because the civil case was No. 14 on the list for the week, he had not expected it to be reached so early in the week, much less on the first day. For these reasons counsel requested a continuance of the civil case. The civil court judge refused counsel's request for a continuance, and proceeded to enter a compulsory nonsuit against appellant.

In its opinion in support of its order refusing to take off the nonsuit the lower court gave four reasons for its actions:

First, Mr. Yelen [appellant's counsel] had several weeks' notice of the present civil matter; yet he allowed himself to be engaged as counsel in a criminal matter only a few days prior to October 14, 1975, knowing full well that both the civil and criminal matters were scheduled at the same time on the same date.

Second, this problem arose previously on several occasions with Mr. Barry Yelen and the court indulged him

but cautioned him that it would not tolerate his failure to reconcile his conflicts in scheduling. In other words, Mr. Yelen had several situations like this in the past and took the attitude that he would try either case and let the court decide which one it would have to continue. This attitude is reflected at the bottom of page 4 of the notes of testimony:

"(BY THE COURT) The motion for continuance is denied, and we shall proceed to selection of a jury. MR. YELEN: Your Honor, I would like to point out that I cannot be here, present, and I am going to have to get back to Judge Hourigan's courtroom."

Third, apparently Mr. Yelen never intended to try the present matter, whether he was in a criminal case or not, jury trial or not guilty waiver. This is borne out by the comment of his client, Thomas J. Coburn, who, aside from his attempt to contact his counsel, Mr. Yelen, was not notified of the present civil proceeding until "forty-five minutes ago" which would have been 1:15 p. m. of October 14, 1976, when, in fact, the case was scheduled for pre-trial at 10:00 a. m. on that same day, some three hours before, at which time the court indulged Mr. Yelen and allowed him until 2:00 p. m. to arrange his affairs.

Fourth. What about the Domanoskys? They were present and ready to defend the action brought by the plaintiff; Mr. Domanosky had to take time off from work to appear on October 14, 1976; he was put to the expense of having expert witnesses available on that date, as well as their attorneys. They suffered the inconvenience and apprehension of going to trial on October 14, 1975. All this was brought about because counsel for the plaintiff was not available for trial after adequate notice.

R. 29a—30a.

Of these reasons, the second and third seem inappropriate. Under the second, the lower court was punishing appellant for his counsel's prior offenses; it seems to us that the appropriate time to take action on those offenses was at the time they occurred. The difficulty with the third reason is

that it is not supported by the record. There is no indication that appellant himself needed to attend the pre-trial conference set for 10:00 a. m. Nor is it surprising that counsel had not advised appellant to be in court on October 14; indeed, the fact that counsel had not so advised appellants is consistent with counsel's statement to the lower court, that since the case was the fourteenth, and last, on the civil list, he had not expected it to be called the first day.

As to the lower court's first reason, the case of *Budget Laundry Co. v. Munter et al.*, 450 Pa. 13, 298 A.2d 55 (1972), is instructive, for the facts there were quite similar to the facts here. A civil case was scheduled on the daily trial list of January 19, 1971. On January 27, when the case was ready for selection of a jury, it was learned that counsel for defendants was in trial before another judge of the same Court of Common Pleas, after which counsel was scheduled for trial in United States District Court. Despite these circumstances (or perhaps, as in the present case, because of them), the lower court ordered the case to trial and, with no counsel appearing for the defense, a verdict was returned for the plaintiff. On appeal the Supreme Court held that the lower court had abused its discretion in refusing to continue the trial date pending counsel's availability. The Court relied on several factors in reaching this conclusion. First, the absent trial counsel had represented to the lower court that he was the only counsel who could try the case.[1] Second, missing counsel's schedule of trials, together with opposing counsel's schedule, made it apparent that even if the case did not go to trial on January 28 (after selection of the jury on January 27), it would nevertheless be tried within the same trial term. Third, and most important, the

---

1. The Court particularly noted that it was not prepared to assume that one of counsel's partners could substitute for absent counsel:
   It is unreasonable to believe that all of the lawyers in a particular law firm will be sufficiently familiar with all of the files in that office so that any one may be substituted for another in the trial of a law suit, and that is to say nothing of any right which a client may have to select counsel to represent him at trial.
   450 Pa. at 21, 298 A.2d at 58.

uncertainties of a trial list make it impossible for an attorney to know precisely when he will be called for trial:

Were it possible to assign a trial date to each law suit on the day that it is filed, there would be much more justification for the action taken by the court below. As an example, the arbitration docket of the Civil Division of the Court of Common Pleas of Allegheny County is so set up that a trial date is assigned to the case when the complaint is filed. Counsel are then aware of their obligations in that division of the court and can make the necessary arrangements to accommodate that court's schedule. Such, however, is not the case in the Civil Division with cases where the amounts in controversy are in excess of the jurisdictional limit of the arbitrators. There, a case is filed and counsel has no way of knowing when the case will reach the trial list, or, for that matter, when it will be tried after it has reached the trial list. The procedural history of the instant case is example enough of what we mean. It will be noted that this case was listed for the trial term commencing January 11, 1971, and specifically listed for the daily trial list of January 19, 1971. Having reached the daily trial list on January 19, 1971, it was not in position for selection of a jury until January 27, 1971, and not in a position for trial until the next day, January 28, 1971. In such circumstances, it is surely unreasonable to expect counsel to be ready for a period of eight or nine days to go to trial when he might very well become involved in other trials in the interim. 450 Pa. at 19–20, 298 A.2d at 57–8.

The facts of the present case are somewhat less appealing than those in *Budget*, but we have nonetheless concluded that in substance they are indistinguishable. To compare them, in terms of the three factors important to the Court in *Budget* : First, while appellant's counsel never stated that he was the only attorney who could try the civil case for appellant (he said only that he was unable to find another attorney to handle the criminal case), there is no indication of record that counsel had associates or partners who might

have been able to assume responsibility for appellant's case. Second, appellant's counsel did say that as soon as the criminal case was finished he would be available for the civil trial. Unlike the record in *Budget*, the record in this case does not disclose whether appellee's counsel's schedule would or would not accommodate a later trial within the current trial term. However, the record does suggest that the court's schedule would not have been inconvenienced by a continuance or postponement, for the case was last on the list. Third—and the most important factor—here, as in *Budget*, counsel did offer a reasonable explanation for his scheduling conflict, specifically, that he thought that he could handle both the civil and criminal cases, because the criminal case looked to be a short one,[2] and because the civil case was far down on the list. As the Supreme Court noted in *Budget*,

> the vagaries of the trial calendar docket admit of no such exactitude. Cases may reach the top of the list much sooner than anticipated, depending upon what disposition is made of earlier cases on the list. There may be a large number of settlements or there may be very few and there may be long trials, thereby causing cases to reach the top of the list much later than had been anticipated. 450 Pa. at 22, 298 A.2d at 59.

It is true that the attorney in *Budget* (as far as the reported opinion reveals) had his several cases pending well in advance of the trial date of the case at which he was absent, whereas here counsel accepted the criminal case[3] on Friday, only three days before the first day of the trial term during which the civil case was to be called. Thus counsel here was cutting it pretty fine. However, when a lower court be-

---

**2.** At the 2:00 p. m. recorded hearing, the lower court and counsel had a difference of opinion whether counsel had said that morning that he expected the criminal case to last one day or several days. However, in our view this factor does not alter the reasonableness of counsel's belief that the criminal trial would be non-jury and therefore relatively short.

**3.** Counsel is an Assistant Public Defender.

lieves that an attorney's scheduling conflict is so inexcusable that the attorney's client must suffer a compulsory nonsuit, the court should ensure that all relevant factors are explored on the record, and that the record supports a finding that the attorney had no reasonable explanation. Here that was not done.

As to the lower court's fourth reason—prejudice to appellees—we believe that there was available to the court another, fairer remedy than the entry of a compulsory nonsuit. If the record developed before the court showed that counsel's error in scheduling, or his failure to request a postponement in more timely fashion, had resulted in expense to appellees,[4] the court might decide that expenses should be assessed against counsel (not against counsel's client). Such an assessment would not infringe the general rule that costs are not assessable against a *party* in the absence of an enabling statutory provision. *Tunison v. Commonwealth,* 347 Pa. 76, 31 A.2d 521 (1943); *Smith v. Equitable Trust Co.,* 215 Pa. 413, 64 A. 591 (1906). Rather the assessment would represent an exercise by the court of its inherent power to conduct its business, here the call of its civil list, in an orderly manner, taking such action against an *attorney,* who after all is an officer of the court, as may be reasonably necessary.

The order of the lower court is vacated, and the case remanded for trial. This order is without prejudice to such further proceeding as may be appropriate incident to the recovery of any expenses incurred by appellees.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

4. In their brief appellees state that Mr. Domanosky had to take time off from work to appear in court on October 14, and that he incurred expenses for expert witnesses whom he made available on that day. As noted, the lower court also referred to these expenses in its opinion, quoted *supra,* 257 Pa.Super. at 477. However, there is nothing of record on either point.