J-A09007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CLARESSA FERGUSON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NEW JERSEY TRANSIT RAIL OPERATIONS, INC., | |
| Appellant | No. 3369 EDA 2013 |

Appeal from the Judgment Entered February 6, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 100 December Term, 2011

BEFORE: BOWES, DONOHUE, AND STABILE, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 16, 2015**

New Jersey Transit Rail Operations, Inc. ("New Jersey Transit") appeals from the judgment entered on the jury verdict in favor of Claressa Ferguson and the trial court's award of attorney's fees and costs. Ms. Ferguson, an assistant conductor for New Jersey Transit, commenced this action under the Federal Employers' Liability Act ("FELA") to recover damages for injuries she sustained when the train on which she was working collided with a vehicle on the tracks. Her action was consolidated for purposes of discovery and trial with a similar action brought by Bradford

Larkin, the locomotive engineer on the train at the time of the accident.[1] After thorough review, we affirm in part and reverse in part.

On July 1, 2010, Ms. Ferguson was the assistant conductor on a train traveling eastbound on the northeast corridor from Trenton, New Jersey, and approaching the Hamilton, New Jersey station. Upon seeing a vehicle on the tracks, Engineer Bradford Larkin pulled the emergency brake to stop the train, a procedure referred to as dumping. Nonetheless, the train struck the vehicle, which was later revealed to be stolen and abandoned. Ms. Ferguson sustained injuries to her neck, left shoulder, knees and lower back in the collision.

Ms. Ferguson filed this FELA action, alleging, *inter alia*, that New Jersey Transit was negligent in failing to secure the tracks in the area of the collision, an area known to be frequented by trespassers, and in failing to properly operate the train. New Jersey Transit moved to consolidate the instant case with that filed by engineer Bradford Larkin. In opposition to consolidation, Ms. Ferguson argued that her interests and those of Mr. Larkin were not aligned, as she believed that his actions or inactions in the operation of the train may have contributed to her injuries. Nonetheless, the two cases were consolidated.

---

[1] New Jersey Transit has filed an appeal in that case at No. 3409 EDA 2013, which has also been assigned to this panel for disposition.

A jury trial commenced on June 10, 2013. During opening statements, counsel for New Jersey Transit told the jury that, "Mr. Larkin's own expert will say the reason he's not looking for work is because he's receiving disability." N.T. Trial Vol I., 6/10/13, at 57. Ms. Ferguson promptly objected to the reference to disability and the trial court sustained the objection and ordered the comment stricken. She did not request a curative instructive or move for a mistrial.

Mr. Larkin was the first witness for the plaintiffs. At 4:02 p.m., after considerable direct examination, the court advised the jury that there would be a short break and the jury was excused. At that time, counsel for Mr. Larkin objected to defense counsel's earlier reference to Mr. Larkin receiving disability benefits and pointed out that this was the subject of a motion *in limine* that had not been ruled upon. He argued that counsel's reference to this collateral source was so prejudicial as to be incurable and requested a mistrial. The court declined to grant a mistrial. Instead, it prohibited any further reference to disability benefits and advised the parties that it would give very explicit instructions to the jury not to consider "any kind of collateral source of benefit" at the close of the case. *Id*. at 105. While acknowledging the reference was improper, the trial court stated that it intended to cure it.

Defense counsel's improper reference was revisited on June 13, 2013, in light of a report that a male juror was overheard commenting to fellow

jurors on June 11 that, "he's on worker's compensation." N.T. Trial, 6/13/13, at 9. At that time, counsel for Mr. Larkin renewed his earlier motion for a mistrial based on the assumption that this was a reference to Mr. Larkin. The trial court deferred its ruling and permitted Plaintiffs' two expert witnesses to testify. After a hearing on the motion for mistrial, during which it was confirmed by a witness that a juror was discussing worker's compensation during Mr. Larkin's testimony and that the jurors had disregarded the trial court's instruction not to discuss the case until deliberations, the trial court declared a mistrial. The court held the plaintiffs' request for costs and fees in abeyance.

A new trial commenced on July 1, 2013 and concluded on July 15, 2013. The plaintiffs mounted a double-pronged offensive. They maintained that the railroad was negligent in failing to secure the area of the collision or warn the engineers of the danger presented by trespassers who frequented that crossing. The plaintiffs also alleged that the railroad's practice of requiring its engineers to multitask, *i.e.*, refer to special bulletins, timetables and other paperwork while operating the train, violated Northeast Operating Rules Advisory Committee ("NORAC") Rule 958, which required engineers to keep a constant lookout ahead and to regulate the speed of the train if distracted. Plaintiffs' expert, railroad safety consultant Paul Byrnes, testified that New Jersey Transit was not teaching compliance with or enforcing NORAC Rule 958.

At the charging conference on July 11, 2013, the court advised of its intention to instruct the jury in accordance with the standard Modern Federal Jury Instruction 89-18, which provided that it could find the defendant negligent if "it instructed its employees to perform tasks or procedures or methods which it knew in the exercise of reasonable care should have known would result in injuries." N.T. Trial, 7/11/13, at 53. That charge led into plaintiffs' proposed charge regarding NORAC Rule 958 and the duty of the railroad to enforce its own operating rules. New Jersey Transit duly noted an exception to both charges. The court expressly declined to give a binding instruction on negligence *per se*, reasoning that the testimony created a jury issue on NORAC Rule 958. It did, however, advise of its intention to instruct the jury that if it found that New Jersey Transit violated NORAC Rule 958, it must determine that the railroad was negligent *per se*.

The jury subsequently returned with a verdict in favor of Ms. Ferguson. As the jury foreperson was reading of the amount of the award, there were murmurs from the jury. Counsel for Ms. Ferguson, realizing that the amount of the award was approximately the same as the stipulated damages for wage loss and did not include damages for pain and suffering, suggested to the court in the presence of the jury that the jury misunderstood the instructions. The jury foreperson verbally confirmed counsel's suspicions. Counsel then added that the jury did not award any damages for pain and suffering.

In light of the confusion, the trial court refused to accept Ms. Ferguson's verdict; the verdict as to Mr. Larkin was not revealed. Instead, the trial court re-instructed the jury regarding damages and directed it to resume its deliberations. New Jersey Transit requested a mistrial based on counsel's remarks. The mistrial was denied, and the jury ultimately returned a $400,000 verdict in favor of Ms. Ferguson and a $679,334 verdict for Mr. Larkin.

New Jersey Transit filed a post-trial motion seeking a new trial, which was denied by the court on November 6, 2013. That same day, the court granted Ms. Ferguson's motion for counsel fees and costs incurred as a result of the earlier June 17, 2013 mistrial, and awarded her $25,961.32. New Jersey Transit appealed, complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court authored its Rule 1925(a) opinion. New Jersey Transit presents three issues for our review:

1. Whether the trial court erred in refusing to grant a mistrial following an inflammatory and prejudicial outburst towards the jury by counsel for Ferguson over his dis-satisfaction with the verdict that prejudiced the jury.

2. Whether the trial court erred in charging the jury that New Jersey Transit Rail Operations, Inc. was negligent *per se* for failing to train/enforce NORAC Operation Rule 958 under the Code of Federal Regulations because such claim is precluded by the Federal Railroad Safety Act.

3. Whether the trial court erred in awarding costs and attorney's fees to Ferguson after declaring a mistrial.

Appellant's brief at 4.

New Jersey Transit first alleges that the trial court erred in refusing a new trial due to Ms. Ferguson's counsel's verbal remarks during the reading of the jury's damage award. As we recently reiterated in *Flenke v. Huntington*, 111 A.3d 1197, 1199-1200 (Pa.Super. 2015), "Trial courts have broad discretion to grant or deny a new trial" and "we review the trial court's decision for abuse of discretion." It is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial. *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1121 (Pa. 2000). This Court "will not reverse a trial court's decision regarding the grant or refusal of a new trial absent an abuse of discretion or an error of law." *Am. Future Sys. v. Better Bus. Bureau*, 872 A.2d 1202, 1210 (Pa.Super. 2005).

In responding to a request for a new trial, the trial court is charged first with deciding whether there was a mistake at trial, and if so, whether that mistake warrants a new trial. Since the harmless error doctrine underlies every decision to grant or deny a new trial, the moving party must demonstrate that he or she has suffered prejudice from the mistake. *Flenke*, *supra* at 1199.

The following occurred. On Friday, July 12, 2013, the jury advised the court that it had reached a verdict in the case. The court crier read aloud

the interrogatories on the verdict form for Ms. Ferguson and the jury foreperson answered in the affirmative that New Jersey Transit failed to enforce NORAC Rule 958; that its failure to enforce the rule was the cause, in whole or in part, of the injuries sustained by Ms. Ferguson; that New Jersey Transit was negligent; that its negligence was the cause of Ms. Ferguson's injuries; and that Ms. Ferguson sustained damages in the amount of $53,000.  N.T., 7/12/13, at 95-6.  As the foreperson read aloud the amount of the verdict, however, there was a murmur from the jury, prompting the trial court to ask the foreperson to read the number again. The foreperson said "53 – 56,000."[2]  *Id*. at 96.  Noting the discrepancy, the trial court asked to see the verdict slip.  At that point, counsel for Ms. Ferguson said, "Your Honor, I'm not sure that the jury quite understood." *Id*. at 97.  The jury foreperson interjected, "We didn't."  *Id*.  Counsel continued, "They just gave what the stipulated amount was.  They did not go into any pain and suffering issue."  *Id*.  The court quelled any further discussion, advised the jury that if there was confusion, "I'm going to send you back to the jury deliberation room," and the court suspended the taking of the verdict.  *Id*.

---

[2]  The parties stipulated that Ms. Ferguson's wage loss totaled $53,000, and the jury was advised of the stipulation.  There was no stipulation as to Mr. Larkin.

After the jury exited the courtroom, counsel for Mr. Larkin posited that the jury may have believed that the stipulation as to Ms. Ferguson's wage loss damages was a stipulation of the totality of her damages. He noted that there was no such stipulation regarding Mr. Larkin. New Jersey Transit requested a mistrial. Counsel for the railroad argued that there had been direct dialogue between plaintiff's counsel and the jury concerning the damage award. Pain and suffering was mentioned and "[c]onfusion, I guess, at that point broke out, and I believe that's grounds for a mistrial." N.T. Trial, 7/12/13, at 98.

Shortly thereafter, the court received a note from the jury foreperson. The jury asked the court to explain, "How do we determine Ms. Ferguson's pain and suffering," and added that they had "assumed her claim is for stipulation only." N.T., 7/12/13, at 100. The court decided to recharge the jury on damages and summoned them to the courtroom for that purpose. The jury returned, the court re-read its damages instruction, and the jury resumed its deliberations. At 4:30 p.m., approximately one hour later, the court released the jurors and instructed them to return Monday to continue deliberating.

On Monday, July 15, 2013, as the jury deliberated, argument resumed on New Jersey Transit's motion for mistrial. At its conclusion, the court made the following findings. There was confusion displayed by members of the jury when the Ferguson verdict was read. Counsel's comments, "though

out loud and inappropriate," were made to the bench and not to any juror. N.T. Trial, 7/15/13, at 9. The court explained that it suspended the proceedings in order to cure any potential prejudice. The court found confusion with respect to the Ferguson verdict slip but none demonstrated as to Larkin. The court denied the mistrial and advised counsel that it would direct the jury to finalize the verdict slip with respect to Ms. Ferguson, but that it would receive the verdict slip that was completed Friday afternoon with regard to Mr. Larkin. The trial court then redirected the jury to continue its deliberations as to Ms. Ferguson only. Forty minutes later, the jury returned with verdicts. The Larkin verdict was dated and signed on July 13, 2013,[3] and awarded Mr. Larkin $679,334 in damages. The Ferguson verdict slip dated July 15, 2013, awarded her $400,000. The jury was polled regarding the Ferguson verdict and all twelve jurors agreed it represented their verdict.

Since the trial court articulated a single mistake, our "review is narrow and limited in scope to the stated reason or reasons, and we must review that reason under the appropriate standard." *Flenke*, *supra* at 1200 (quoting *Harman*, *supra* at 1122-23). In determining whether the trial court abused its discretion in denying a mistrial based on counsel's

_____

[3] The verdict slip was actually dated July 13, 2013, which was Saturday. The court concluded that the date was in error and that it should have read July 12, 2013.

comment, we examine the remark made, the circumstances under which it was made, and the precautions taken by the court to remove its prejudicial effects. **Hill v. Reynolds**, 557 A.2d 759, 765-66 (Pa.Super. 1989) (citation and quotation marks omitted).

We held in **Poust v. Hylton**, 940 A.2d 380, 385 (Pa.Super. 2007), that "a new trial is to be granted where the unavoidable effect of the conduct or language was to prejudice the fact-finder to the extent that the fact-finder was rendered incapable of fairly weighing the evidence and entering an objective verdict." In that case, counsel's reference to cocaine in closing argument in clear violation of the court's earlier order, "could not be obliterated from the minds of the jurors." **Id**. at 387. We held that grant of a mistrial was required therein "to promote fundamental fairness, to ensure professional respect for the rulings of the trial court, to guarantee the orderly administration of justice, and to preserve the sanctity of the rule of law." **Id**.

The record confirms that counsel for Ms. Ferguson's remarks were directed to the trial court. The record also supports the trial court's finding that the jury displayed confusion, the foreperson acknowledged the same, and all of this occurred before counsel's mention of "pain and suffering." The subsequent question from the jury confirmed the court's belief that it did not understand the role of the wage loss stipulation in fashioning Ms. Ferguson's damages award. The trial court found that counsel's comments

were not prejudicial to New Jersey Transit and that the jury arrived at its award "after reasoned and rational deliberations, and was not motivated or prejudiced by counsel's interruption." Trial Court Opinion, 6/17/14, at 37.

On the record before us, we find no basis to disturb the trial court's conclusion that counsel's comments did not render the jury incapable of fairly weighing the evidence and entering an objective verdict. Thus, we find no error in the court's refusal to grant a mistrial, and no new trial is warranted on that basis.

Next, New Jersey Transit offers several bases in support of its contention that the trial court erred in charging the jury that the railroad was negligent *per se* for failing to train employees in or enforce NORAC Rule 958 under the Code of Federal Regulations ("CFR"). First, it relies upon ***Lombardy v. Norfolk Southern Ry.***, 2014 U.S. Dist. LEXIS 75244 (N.D. Ind. 2014), in support of its position that such a claim is preempted by the Federal Railroad Safety Act ("FRSA"). In ***Lombardy***, partial summary judgment was granted on a claim for negligent training, education, and instruction where evidence was uncontroverted that the railroad had complied with the FRSA regulations for training and education. The court found that compliance with the FRSA precluded FELA relief on this basis.

Ms. Ferguson counters that New Jersey Transit waived any contention that the FRSA pre-empted this FELA claim, and points out that the record is devoid of any mention or reference to that statute. Furthermore, New

- 12 -

Jersey Transit did not object to Mr. Byrnes testimony regarding the Code of Federal Regulations and the NORAC rules.

Preliminarily, we note that New Jersey Transit's statement of issue implies that the trial court issued a binding instruction for plaintiffs on negligence *per se*. The record reveals, however, that the trial court instructed the jury that **if** it found that New Jersey Transit failed to train its engineers in NORAC Rule 958, it must find New Jersey Transit negligent *per se*. N.T. Trial, 7/12/13, at 56 (emphasis added). Thus, the issue of whether New Jersey Transit failed to train its engineers was placed squarely before the factfinder.

Second, as Ms. Ferguson correctly observes, New Jersey Transit did not advance the preemption argument in the trial court. The Federal Railroad Safety Act was mentioned for the first time on appeal.[4] Since New Jersey Transit failed to articulate at trial the legal issue it raises herein, it is waived for purposes of appeal. ***Dilliplaine v. Lehigh Valley Trust Co.***, 322 A.2d 114, 116-17 (Pa. 1974) ("Appellate court consideration of issues

---

[4] Furthermore, New Jersey Transit did not assign as error in a post-trial motion, or in its Pa.R.A.P. 1925(b) concise statement of issues complained of on appeal, that claims of inadequate training are precluded by federal regulations promulgated pursuant to the Federal Railroad Safety Act, 49 U.S.C. §§20101 *et seq*.

not raised in the trial court results in the trial becoming merely a dress rehearsal.").

In somewhat of a *non-sequitur*, New Jersey Transit suggests that if this Court rejects its preemption argument, then the trial court abused its discretion in refusing to permit road foreman, Al Zahn, to testify that New Jersey Transit enforced NORAC Rule 958 and to interpret the black box data from the accident. Appellant's brief at 33. In reviewing this claim, we are mindful that, "The admissibility of evidence is a matter addressed to the discretion of the trial court and may be reversed on appeal only upon a showing that the court abused its discretion." ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262 (Pa.Super. 2008). In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party." ***Simmons***, ***supra*** at 584-85.

New Jersey Transit called Al Zahn, its chief road foreman, to testify. In response to plaintiffs' request for an offer of proof, the railroad proffered as follows. Mr. Zahn would testify "about the duties of an engineer while operating the train" and the Major Incident Event Recorder, the so-called "black box" data regarding this incident. N.T. Trial, 7/10/13, at 18. Additionally, he would discuss the information contained on the data recorder, namely speeds and braking, for the last thirty seconds prior to the stopping of the train. He would also testify regarding the enforcement of

NORAC rules generally, and in particular, as to Mr. Larkin during the relevant time frame.

Contrary to New Jersey Transit's representation, the court permitted Mr. Zahn to testify that he reviewed data from the black box to "monitor engineers for compliance [with] all kinds of NORAC rules," from 2005 until 2011. *Id*. at 11. Mr. Zahn testified that New Jersey Transit enforces NORAC rules and trains its engineers to comply with those rules and that he personally observed train operations to ensure that the rules were followed and would reprimand engineers who took their eyes off the track to read bulletins or timetables. Mr. Zahn took issue with Mr. Byrnes' conclusion that looking down and reading bulletins constituted multitasking or that multitasking required an engineer to take his eyes off the track ahead. Although Mr. Zahn did not specifically reference NORAC Rule 958, the trial court did not preclude him from doing so.[5] The facts do not support this assignment of error.

Next, the railroad alleges that the court committed reversible error in precluding Mr. Zahn from interpreting data from the black box and providing a second-by-second account of the speed of the train for the thirty-two

---

[5] Mr. Zahn was not permitted to testify that he reprimanded Mr. Larkin on two prior occasions for distractions while driving the train. The court found such evidence to be unfairly prejudicial in light of New Jersey Transit's position that Mr. Larkin was in compliance with all operating rules on the day in question.

seconds prior to the collision based on the absence of an expert report. The trial court precluded Mr. Zahn from testifying about the meaning of the event recorder readings in the five seconds leading up to Mr. Larkin's application of the brake since that would be "tantamount to expert testimony" and Mr. Zahn was not identified as expert and had not provided a report. Trial Court Opinion, 6/17/14, at 30; **see** Pa.R.C.P. 4003.5.

The railroad contends that the lack of an expert report should not have been fatal since plaintiffs could not claim unfair surprise or lack of notice. The railroad maintains that plaintiffs had the data and provided Mr. Byrnes with a copy of the download for his review. Appellee's brief at 34.

We find no merit in the railroad's position. Absent an expert report, the plaintiffs were not apprised of the scope of Mr. Zahn's proffered testimony and the need for their own expert. While Mr. Byrnes was provided with a copy of the download, there is nothing in the record to suggest that his expertise extended to black box data interpretation. Additionally, the plaintiffs also objected at trial that the proffered testimony was irrelevant and cumulative. Although the trial court did not exclude it on that basis, our review of the record and briefs reveals that the railroad has yet to explain the significance of the proffered data interpretation to its case.[6] Thus, we

---

[6] New Jersey Transit's sole response to objections that the testimony was irrelevant and cumulative was that, since plaintiffs had advised the jury
*(Footnote Continued Next Page)*

find no basis for concluding that its exclusion constituted reversible error that warrants a new trial.

New Jersey Transit's final challenge is to the trial court's award of $25,961.32 in costs and attorney's fees to Ms. Ferguson. The law is well settled that "[t]he trial court has great latitude and discretion with respect to an award of attorney's fees pursuant to a statute." **Scalia v. Erie Ins. Exchange**, 878 A.2d 114, 116-117 (Pa.Super. 2005) (citing **Cummins v. Atlas R.R. Construction Co**., 814 A.2d 742, 746 (Pa.Super. 2002)). Our review of a trial court's order awarding attorney's fees to a litigant is limited solely to determining whether the trial court palpably abused its discretion in making a fee award. **Lucchino v. Commonwealth**, 809 A.2d 264 (Pa. 2002); **Miller v. Nelson**, 768 A.2d 858 (Pa.Super. 2001). If the record supports a trial court's finding of fact that a litigant violated the conduct provisions of the relevant statute providing for the award of attorney's fees, such award should not be disturbed on appeal. **Thunberg v. Strause**, 682 A.2d 295, 299-300 (Pa. 1996).

We examine in detail the events at the first trial that culminated in the mistrial and the subsequent award of counsel fees and costs. On June 10, 2013, the trial court met with counsel to resolve some of the motions *in*

_(Footnote Continued)_ ―――――――――――

several times that, based on the download, "Mr. Zahn has come to the conclusion that Mr. Larkin did nothing wrong[,]" Mr. Zahn should be able to talk about it. N.T. Trial, 7/10/13, at 27.

- 17 -

*limine* that would likely be implicated in counsel's opening statements in the case. Defense counsel took the lead in identifying those motions that required immediate rulings. He did not mention a motion *in limine* filed by Mr. Larkin seeking to preclude the defense from referencing the fact that Mr. Larkin was on disability or a similar motion by Ms. Ferguson to preclude reference to her prior claims.

Nonetheless, during New Jersey Transit's opening statement, counsel told the jury that although Mr. Larkin's counsel provided a "big number" for his client's wage loss, "Mr. Larkin's own expert will say the reason he's not looking for work is because he's receiving disability." N.T. Trial Vol I., 6/10/13, at 57. Counsel for Ms. Ferguson promptly objected to the reference to disability and the trial court sustained the objection and ordered the comment stricken. No request for curative instructive or motion for mistrial was made at that time.

A moment later, in reference to Ms. Ferguson, defense counsel told the jury that she complained of pain in the same shoulder in several prior claims against the railroad. He added, "In fact her own doctor will look at her report and say, I wasn't aware of the fact that her doctor from the last claim permanently disabled her because of that shoulder." *Id*. at 59. Ms. Ferguson's counsel objected and the trial court cautioned defense counsel "We're going to move on, counsel." *Id*.

Mr. Larkin was the first witness called to testify by the plaintiffs. At 4:02 p.m., after considerable direct examination, the court advised the jury that there would be a short break and the jury was excused. Ms. Ferguson's counsel placed on the record an objection to defense counsel's reference to prior claims and asked the court to rule on the motion *in limine*. Counsel for Mr. Larkin registered an objection to defense counsel's earlier reference to Mr. Larkin receiving disability benefits and pointed out that this was the subject of an unresolved motion *in limine*. Counsel for Mr. Larkin argued that defense counsel's reference to this collateral source was so prejudicial as to be incurable and requested a mistrial.

The trial court admonished defense counsel for failing to highlight the motion *in limine* regarding disability benefits "as one that needed to be resolved prior to openings." *Id*. at 106. The court stated that it would review the motion *in limine* and "[f]or now, we're not going to have any reference to claims as it relates to the injury." *Id*. at 108.

Defense counsel, in an attempt to justify his reference to Mr. Larkin's receipt of disability benefits, advised the court that he "clearly would never raise that unless I thought they had opened the door." *Id*. He maintained that Mr. Larkin's expert opened the door when he opined at his deposition that it made no financial sense for Mr. Larkin to find work since he was receiving disability payments. The trial court rejected counsel's excuse, noting that the door could not have been opened because no evidence had

been presented to the jury, and added that it might preclude the jury from hearing such testimony. However, the court declined to grant a mistrial. Instead, it prohibited any further reference to disability benefits and advised the parties that it would give very explicit instructions to the jury not to consider "any kind of collateral source of benefit" at the close of the case. *Id*. at 109. The reference was improper but the trial court stated that it intended to cure it.

Trial continued on June 11, 2013, was in recess on June 12, 2013, and when it resumed on June 13, 2013, the court entertained additional argument on the remaining motions *in limine*. At the conclusion of argument, counsel for Mr. Larkin introduced the fact that a juror was overheard by Attorney Robert Goggin making comments about worker's compensation on June 11, 2012, and that Mr. Goggin reported the situation to the court. Counsel for Mr. Larkin advised the court that he believed Defense counsel's comment regarding Mr. Larkin's receipt of disability benefits and the juror's reference to worker's compensation were "tied together," and renewed his motion for mistrial. N.T., 6/13/13, at 39. The court announced that it would entertain the motion for mistrial, but prior to suspending trial, Plaintiffs' expert witnesses Dr. Carl Berkowitz and Mr. Paul Byrnes were permitted to present live testimony.

Both plaintiffs filed motions for mistrial and hearing on the motions was held on June 17, 2013. Attorney Goggin reported the following. Mr.

Larkin was on the stand. The court and counsel were at sidebar discussing an objection. Mr. Goggin, located five to six feet from the jury box, was leafing through a trial binder to find an exhibit. From that location, he "distinctly heard one of the jurors say he's on worker's comp, assuming talking about Mr. Larkin." N.T. Mistrial Motion, 6/17/13, at 9. He was unable to pinpoint the juror, but identified a male voice. Mr. Goggin added that, after he sat down, he observed about half of the jurors turned toward each other engaged in conversation and comparing notes. Anthony DiGiulio, an associate of counsel for Ms. Ferguson, testified that he did not hear the substance of any conversation but he did hear talking, particularly during Mr. Larkin's direct testimony. Juror No. 6, a male, was talking to Jurors Nos. 5 and 7, "showing notes and pretty animated in his conversation." *Id*. at 11.

Following argument of counsel, the trial court concluded that it would constitute reversible error to proceed with the trial under the circumstances, and it granted the motion for mistrial. It stated on the record that "mere mention" of collateral sources is "a fatal blow to the trial." *Id*. at 28. That, coupled with the fact that the juror's discussion was a violation of the court's prohibition against sharing thought processes prior to deliberation, led to the court's conclusion that "to go further with this case would amount to reversible error." *Id*. at 29. The trial court held under advisement the matter of plaintiffs' costs and attorney's fees. It later awarded counsel fees pursuant to 42 Pa.C.S. § 2503(7), which permits such an award if a

participant's conduct during the pendency of the matter is "dilatory, obdurate or vexatious,"[7] and its own inherent power to control the proceedings.

New Jersey Transit contends first that the trial court did not make the requisite finding that counsel for the railroad's conduct was "obdurate, vexatious or acting in bad faith" to support an award of attorney's fees under § 2503(7). It maintains that the court merely stated that counsel "erred" in referencing Mr. Larkin's receipt of disability benefits.

The court first noted that "[i]t is well-settled law that collateral source benefits should not be introduced absent a plaintiff offering information on such a subject . . ." Trial Court Opinion, 6/17/14, at 14. Despite that fact, and although a motion *in limine* had been filed to preclude reference to collateral source benefits, defense counsel "forged ahead." *Id*. at 15. The court found that counsel's "comments were the direct cause of an eventual mistrial." *Id*. at 16. Thus, the court concluded that counsel "interfered with

_____

[7] That statute provides in pertinent part:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

42 Pa.C.S. § 2503(7).

the ordinary business of this Court when he gratuitously mentioned the collateral source benefits of Plaintiff-Larkin in opening statements." *Id*.

We agree with New Jersey Transit that an award of counsel fees pursuant to 42 Pa.C.S. § 2503(7) must be supported by a trial court's specific finding that the conduct is vexatious, obdurate, or dilatory. *Township of South Strabane v. Piecknick*, 686 A.2d 1297, 1299 (Pa. 1996); *Kulp v. Hrivnak*, 765 A.2d 796 (Pa.Super. 2000). Dilatory conduct occurs "where the record demonstrates that counsel displayed a lack of diligence that delayed proceedings unnecessarily and caused additional legal work." *In re Estate of Burger*, 852 A.2d 385, 391 (Pa.Super. 2004). Arguably, causing a mistrial and the delay associated with a new trial may be considered dilatory.

The trial court also predicated its award on "its inherent power to conduct its business . . . in an orderly manner, taking such action against an Attorney, who after all is an officer of the court, as may be reasonably necessary[.]" Trial Court Opinion, 6/17/14, at 11 (citing *Coburn v. Domanosky*, 390 A.2d 1335, 1338 (Pa.Super. 1978)). In *Coburn*, we vacated a compulsory nonsuit entered against a party, reasoning that if unnecessary expenses were incurred due to counsel's scheduling conflict, perhaps costs should be assessed against counsel instead.

We are troubled by the sequence of events leading up to the declaration of the mistrial. We observe that a mistrial would likely have

- 23 -

been avoided if the trial court had ruled on all of the motions *in limine* prior to trial. That said, defense counsel's reference in opening statement to Mr. Larkin's receipt of disability benefits was improper and arguably so prejudicial as to warrant a mistrial at that time. However, no one moved for a mistrial at that time.[8] Ms. Ferguson objected but apparently acquiesced in the court's decision to sustain her objection and strike the comment. She did not request a curative instruction; Mr. Larkin did not even object. Given the plaintiffs' apparent lack of concern over defense counsel's improper comment, one can hardly fault the trial court for believing that it could cure any prejudice.

Trial continued. Additional attorney's fees were incurred, as well as the substantial expenses attendant to two expert witnesses. Neither the trial court nor the plaintiffs point to any further objectionable conduct on the part of defense counsel. However, upon substantiating that a male juror referenced worker's compensation, the trial court declared a mistrial. Later, counsel fees and costs were assessed against defense counsel based on the

_____

[8] The railroad contends that Ms. Ferguson did not have standing to object and move for a mistrial as the reference pertained only to Mr. Larkin although it cites no authority in support of that position. Actually, neither plaintiff sought a mistrial immediately after defense counsel's objectionable comments. It was only later, well into Mr. Larkin's direct testimony, that Mr. Larkin objected and sought a mistrial. The court denied the motion due to its belief that it could cure any prejudice with a proper jury instruction. N.T. Trial, 6/10/13, at 110.

court's apparent finding that the juror's reference to worker's compensation was triggered by counsel's reference to disability benefits in his opening statement.

We cannot discern from the record whether the male juror's remark about worker's compensation was made in reference to Mr. Larkin or whether it was prompted by defense counsel's objectionable reference to disability benefits. The trial court held a hearing but did not question any of the jurors. Additionally, we note that the trial court expressed frustration at the jurors' disregard of its instruction not to discuss the case or share notes, and this conduct seemed to factor heavily into the court's decision to grant the mistrial. Thus, we find no basis for the court's conclusion that Ms. Ferguson "incurred costs associated with litigating a case that had to be cut short due solely to error attributable to Appellant's counsel[.]" Trial Court Opinion, 6/17/14, at 15. Counsel's conduct was not dilatory within the meaning of § 2503(7), nor did it interfere with the trial court's inherent power to conduct its business in an orderly manner. For that reason, we vacate the order awarding attorney's fees and costs.

In light of the foregoing, we affirm the liability and damage award in favor of Ms. Ferguson and vacate the award of attorney's fees and costs.

Judgment affirmed in part and reversed in part.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/16/2015</u>